UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN D BARD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br><br>GSV ASSET MANAGEMENT, LLC, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-00488-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 13, 15 |

## INTRODUCTION

Plaintiff Stephen D. Bard ("Bard") brought an action for breach of contract, fraud, and intentional interference with contractual relations against GSV Asset Management, LLC ("GSVAM"), Michael T. Moe ("Moe"), SuRo Capital Corporation ("SuRo") and Mark Klein ("Klein") stemming from the execution and implementation of a Repurchase Agreement entered by Bard and GSVAM. GSVAM and Moe filed a joint motion to dismiss the reformation, fraud, and aiding and abetting fraud counts asserted against them, as well as to dismiss "the request for punitive damages." GSVAM and Moe Motion to Dismiss ("GSVAM Mot.") [Dkt. No. 13] at 1. This motion did not seek to dismiss the breach of contract and breach of implied covenant counts against GSVAM. Separately, Klein and SuRo filed a joint motion to dismiss the two counts asserted against them. SuRo and Klein Motion to Dismiss ("SuRo Mot.") [Dkt. No. 15].

At the hearing on May 31, I ordered the parties other than SuRo to make comprehensive initial disclosures including communications between the parties pertaining to Bard or the disputed Repurchase Agreement. Civil Minutes, [Dkt. No. 42]. I also gave plaintiff leave to amend his complaint. *Id.*

On June 13, Bard voluntarily dismissed all claims against defendants SuRo and Klein, with prejudice. Notice re Voluntary Dismissal, [Dkt. No. 45]. This dismissal renders moot the Motion to Dismiss filed by SuRo and Klein A, and it is **DENIED** as moot. On June 24, Bard filed an amended complaint against GSVAM, Moe, and three new defendants. First Amended Complaint, Dkt. No. 48]. The Motion to Dismiss filed by Moe and GSVAM regarding the original complaint is perhaps rendered moot by changes in the FAC, but to the extent it is not, the motion is **GRANTED** for the reasons discussed below.

## FACTUAL BACKGROUND

Bard's Complaint makes the following allegations, which I accept as true for purposes of the motion to dismiss. Bard co-founded two companies with Michael T. Moe ("Moe"): GSV Asset Management, LLC ("GSVAM") and SuRo Capital Corporation ("SuRo"). Complaint ("Compl.") [Dkt. 1-1] at 1; ¶¶ 13-14. GSVAM is an investment management firm servicing accredited institutions and high-net-worth individuals *Id.* ¶ 2. For most of the companies' history, SuRo has been GSVAM's largest client and revenue source, based on an Investment Advisory Agreement between the companies. ¶ 14. Bard served as Chief Financial Officer (CFO) and Chief Compliance Officer (CCO) at SuRo and as Chief Operating Officer (COO) at GSVSM until a dispute arose between Bard and Moe which led Bard to depart both companies in 2014. ¶¶ 15-16.

On September 18, 2017, pursuant to a legal settlement, Bard and GSVAM executed a Repurchase Agreement whereby Bard surrendered his interest in GSVAM in exchange for $5 million. Bard received $1.5 million of the purchase price up front and was entitled to monthly

2

payments of approximately $29,000 until the debt was paid. ¶ 18. The Repurchase Agreement contains a provision that allows for a reduction of payments to Bard when trailing twelve-month revenues ("TTM revenues") from certain entities falls below $2.5 million.

> (a) if, following the date hereof, the aggregate revenues earned during the twelve-month period immediately prior to a Pay Due Date (such trailing twelve-month revenues shall be recognized on an accrual accounting basis in accordance with U.S. Generally Accepted Accounting Principles, as of the calendar month preceding such Pay Due Date, as determined from time to time, the "Aggregate TTM Revenues"), received by the Company from the entities identified on Annex A hereto (the "Identified Entities") decreases below $2,500,000 at any time or from time to time during any year, then the amount of the Recurring Payment Amount shall be reduced to an amount equal to the product obtained by multiplying (i) the Aggregate TTM Revenues times (ii) ten percent (10%) times (iii) one-twelfth (1/12);

Repurchase Agreement [Dkt. 18-1] at 3 § 3.1(a). The entities identified in Annex A include GSV Capital Corp., now known as SuRo. *Id.* at 20.

In March 2019, SuRo announced that it was terminating its contract with GSVAM. ¶ 35. SuRo explained during an earnings call that instead of using GSVAM as an outside vendor, SuRo was internalizing the functions formerly served by GSVAM. *Id.* The repurchase agreement contains a provision titled "No Frustration of Purpose." ¶ 20; §10.4. One example specifically contemplated by this provision is a scenario where GSVAM personnel provide similar services to SuRo within two years after GSVAM ceases providing such services. §10.4; ¶21.

SuRo hired several GSVAM personnel, included Allison Green, formerly SVP of Finance and Controller at GSVAM, who became CFO at SuRo, Jackson Stone, who had serviced SuRo while at GSVAM and took a senior role at SuRo, and Defendant Klein, who became CEO of SuRo. Compl. ¶ 36. These personnel were hired to perform the same tasks that GSVAM had previously done for SuRo. *Id.*

In September 2022, GSVAM stopped making payments to Bard without prior notice. ¶ 45. $1.8 million remained outstanding on the original purchase price. ¶ 46. This occurred after

current CFO and CCO of GSVAM William Vastardis abruptly emailed Bard on September 7, 2022, claiming that GSVAM had been "overpaying you each month for the past two years." ¶ 42 Vastardis attached spreadsheets purporting to show that TTM revenues (described as "Bard Revenue" on the spreadsheets) had dropped to $0 in 2021. ¶ 44. GSVAM has refused to elaborate on the content of these spreadsheets and has failed to provide Bard with a copy of its audited financial statements despite being required to do so under the agreement. Repurchase Agreement § 3.1(e). ¶ 50.

Bard alleges that he had an oral agreement with Klein, not memorialized in the executed Repurchase Agreement, that Moe would transfer his individual interests in the companies listed at Annex A to GSVAM. ¶ 88. Bard alleges that there was written evidence of this agreement in GSVAM's files, which he accessed through a data room terminal set up during the litigation settled by the Repurchase Agreement. *Id.* The Repurchase Agreement does acknowledge Bard's reliance on information contained in a "data room." ¶ 24. Specifically, § 7.10 states that GSVAM "acknowledges that the Seller determined the Upfront Payment Amount and the Recurring Payment Amount based on the information supplied by the Company in the Merrill Corporation 'DataSite Project Pegasus Dataroom 2017' that the Seller was invited to access beginning on May 8, 2017 (the 'Data Room'), including but not limited to management presentations, due diligence discussions, estimates, projections or forecasts involving the Company and the Identified Entities. The Company acknowledges and represents that the information in the Data Room was true and accurate as of the date posted to the Data Room." Repurchase Agreement § 7.10.

The spreadsheet that Vastardis provided to Bard distinguished between revenue that GSVAM counted toward for purposes of its payments to Bard and other revenue that did not. ¶ 44. While the spreadsheet indicated that GSVAM's "Bard Revenue" in 2021 was zero, its "Non-Bard Revenue" was high enough not to trigger any application of the Repurchase Agreement's temporary payment reduction provision. *Id.* Bard's complaint does not specifically

allege that the difference between "Bard Revenue" and "Non-Bard Revenue" was attributable to Moe's failure to transfer his interests to GSVAM as the parties had allegedly agreed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened standard for alleging fraud or mistake: "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This standard applies even where a complaint does not expressly plead fraud but makes claims that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). To satisfy the heightened pleading standard, a plaintiff must describe the "who, what, when, where, and how" the fraud or mistake occurred to avoid factually

5

baseless claims and to "give defendants notice of the claims asserted against them." *Id.* at 1106.

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### I. GSVAM AND MOE'S MOTION TO DISMISS

#### A. Fraud and Aiding and Abetting Fraud

Where a plaintiff alleges fraud against multiple defendants, he is required to plead facts providing "each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Vega v. JP Morgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1115 (N.D. Cal. 2009) (citation omitted).  To support his claim of fraud, Bard only asserts that Klein made a misrepresentation to him when negotiating the Repurchase Agreement, and that he was acting as an agent for GSVAM and Moe in doing so.  "Under California law, the elements of common law fraud are 'misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages.'" *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131 (N.D. Cal. 2009).  Bard's claims against GSVAM and Moe rely on an agency relationship because there is no indication that GSVAM and Moe had actual knowledge of any misrepresentations made by Klein.

Bard cites a specific misrepresentation made by Klein on a phone call in August 2017. The representation was that Moe would transfer his personal ownership interest and entitlement to

revenue from the entities listed in Annex A of the Repurchase Agreement to GSVAM. ¶ 29. Bard further alleges that this agreement was memorialized in a document that he viewed in the data room. However, in his initial complaint, Bard did not have sufficient information about communications between Klein and defendants GSVAM and Moe to sufficiently establish that they had knowledge of this representation, or that it should otherwise be attributed to them. Bard also does not plead sufficient facts to establish reasonable reliance upon Klein's representation. Given Bard's sophistication as a high-level officer of two financial services companies and Bard's history with the defendants, more is needed to establish why it was reasonable for him to rely upon oral representations rather than ensure that the representations were memorialized in the written agreement.

For the same reasons, Bard also fails to state a claim for aiding and abetting. For it, Bard must plead with particularity that GSVAM and Moe both "knew" of and "gave substantial assistance" to the fraud. *Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir. 2016). Bard does not adequately plead these required elements for his fraud-based claims against either party. Even if Klein was acting as an agent for GSVAM and Moe, Bard cites no evidence suggesting that these parties knew of this representation by Klein, nor that they gave any assistance, aside from GSVAM's execution of the negotiated agreement.

### B.   Request for Reformation

Because this remedy is premised on fraud or mistake, Bard must meet Rule 9's heightened pleading standard when moving for reformation. Fed. R. Civ. P. 9(b); *see Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1197 (E.D. Cal. 2010). He must show "what the real agreement was, what the agreement as reduced to writing was, . . . where the writing fails to embody the real agreement[,] how the mistake was made, whose mistake it was, and what brought it about." *Phillips Med. Capital, LLC v. Med. Insights Diagnostics Ctrs., Inc.*, 471 F. Supp. 2d 1035, 1047 (N.D. Cal. 2007) (quoting *Lane v. Davis*, 172 Cal. App. 2d 302, 309 (1959)). He

alleges that the agreement was for Moe to transfer his personal interests to GSVAM, and that the written agreement failed to embody this representation by Klein. For the same reasons discussed above, Bard has not pleaded sufficient facts to meet Rule 9's heightened pleading standard.

### C. Punitive Damages

Punitive damages may be awarded in an action not arising in contract only if the plaintiff proves by clear and convincing evidence that defendant is guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294 (2017); *Stewart v. Truck Ins. Exchange*, 21 Cal. Rptr. 2d 338, 347 (Cal. 1993). Because the fraud claims are dismissed, it is necessary to dismiss the request for punitive damages as well. *See Lee v. Kitchables Prods.*, No. 21-cv-01913-HSG, 2021 U.S. Dist. LEXIS 140045, at *9 (N.D. Cal. July 27, 2021).

### D. Statute of Limitations

The applicable statute of limitations for Bard's fraud claim is three years. Cal. Code Civ. Proc. § 338(d). "An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* The statute of limitations begins to run when Bard sustained "harm." *Mayhew Plaza Woodland Hills II, LLC v. Kelsey*, No. G055668, 2019 WL 2295784, at *8 (Cal. Ct. App. May 30, 2019). Where the harm was not discovered immediately, plaintiffs must "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Rosa v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1131–32 (N.D. Cal. 2009).

Only SuRo and Klein raised the statute of limitations defense in their motion, which is now moot. I will not address this issue now, other than to note that it exists. Bard has amended his complaint and I will consider the statute of limitations arguments if they are raised in the future.

## II. SURO AND KLEIN'S MOTION TO DISMISS

On June 13, Bard voluntarily dismissed with prejudice all claims against defendants SuRo

8

and Klein.  Notice, [Dkt. No. 45].  This dismissal renders moot the Motion to Dismiss filed by SuRo and Klein.  Accordingly, SuRo and Klein's motion to dismiss is **DENIED** as moot.

## CONCLUSION

For the foregoing reasons, I **GRANT** GSVAM and Moe's motions to dismiss without prejudice and **DENY** Suro and Klein's motion to dismiss as moot.

**IT IS SO ORDERED.**

Dated: June 29, 2023



William H. Orrick
United States District Judge