UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN D BARD,<br><br>    Plaintiff,<br><br>    v.<br><br>GSV ASSET MANAGEMENT, LLC, et al.,<br><br>    Defendants. | Case No. 23-cv-00488-WHO<br><br>**ORDER DENYING DEFENDANTS HMF, FRANCO, AND HELD'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 47, 53, 56, 71, 72, 78, 80 |

Defendants HMF Partners, LLC ("HMF")[1] and its owners Thomas C. Franco and Felipe Held, (collectively the "HMF defendants") move to dismiss plaintiff Bard's First Amended Complaint [Dkt. No. 47-1] ("FAC"). The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing on the motion set for October 11, 2023, is **VACATED.** (The Case Management Conference remains as scheduled.) The HMF defendants seek the dismissal of Bard's fifth cause of action for aiding and abetting fraud and Bard's sixth cause of action for intentional interference with contractual relations. For the reasons set forth below, the motion is **DENIED**. The motions to file under seal are provisionally **DENIED**.

## BACKGROUND

Much of the relevant factual background is described in my prior orders, and those discussions are incorporated by reference here. *See* First MTD Order [Dkt. No. 51]; Second MTD Order [Dkt. No. 77]. I summarize Bard's allegations only as they relate to the HMF defendants and assume familiarity with the case.

Bard's fraud allegations deal with an allegedly false promise made to him during

---

[1] HMF represents that this is its organizational name, and that the FAC incorrectly refers to it as "HMF Capital Partners LLC."

negotiation of a Repurchase Agreement with GSV Asset Management, LLC ("GSVAM"). He alleges that defendants Michael Moe and GSVAM represented to Bard that Moe would transfer certain personal interests in revenue streams to GSVAM such that those revenue streams would be available to fulfill GSVAM's payment obligations to Bard under the Agreement. Bard asserts that he negotiated and relied on this promise. In August 2017, an agent of GSVAM orally represented to Moe that the transfers were in process and would be completed shortly after execution of the Repurchase Agreement. *Id.* ¶¶ 32, 108. Bard alleges that this representation was corroborated by documents made available to him during the negation process. *Id.*

Contrary to those representations, Moe did not transfer the assets to GSVAM. Instead, on December 11, 2017, pursuant to an agreement with HMF, Moe transferred his interest in these assets to a newly created entity: GSV Legend LLC ("Legend LLC"). *Id.* ¶¶ 40-41. This parallel transaction with HMF was expressly intended to provide GSVAM with cash to pay Bard the money it owed to him. FAC ¶ 38; HMF Agreement [Dkt. No. 72-1], Declaration of Michael Palmieri ("Palmieri Decl."), Ex. B. The HMF agreement explicitly stated that it was "in all cases, subject to the rights of Stephen D. Bard under th[e] Repurchase Agreement." HMF Agreement ¶ 1. Bard alleges that Moe went to great lengths to conceal the existence of the HMF agreement from Bard. FAC ¶ 42. Indeed, Bard did not know about the HMF transaction or HMF's alleged involvement in the fraud until the transaction was revealed through discovery.

In March 2019 GSVAM lost its contract with its largest client, SuRo. *Id.* ¶ 44. Shortly thereafter, the HMF investors also terminated their contract with GSVAM. Emails between the HMF defendants and Moe revealed during discovery demonstrate that the HMF defendants were aware of Moe's conflicts with Bard. Specifically, the attachment to a June 8, 2019, email from Franco to Moe and Held posed the rhetorical question, "[h]ow do we get out from the Bard obligation?" ¶ 53. Moe responded by email the same day, stating "[o]n the Bard obligation, I don't know if there is a legal solution. I do have some thoughts but that should be part of a comprehensive conversation." *Id.* Similarly, an attachment to a June 12, 2019, email from Held to Moe and Franco about restructuring the HMF/GSVAM relationship stated that "[n]o more payments given that [HMF] has paid more than 3 million so far, the platform lost all their assets

1  and we won't keep paying Bard.  We will deal legally with Bard." *Id.*  GSVAM continued
2  making payments to Bard for three months following these email exchanges, until September
3  2019.  *Id.* ¶ 56.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened standard for alleging fraud or mistake: "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This standard applies even where a complaint does not expressly plead fraud but makes claims that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  To satisfy the heightened pleading standard, a plaintiff must describe the "who, what, when, where, and how" the fraud or mistake occurred to avoid factually baseless claims and to "give defendants notice of the claims asserted against them." *Id.* at 1106.

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

# DISCUSSION

## I. AIDING AND ABETTING FRAUD CLAIM (FIFTH CAUSES OF ACTION)

Rule 9(b) requires a party to state with particularity the circumstances constituting the alleged fraud or mistake. I already found that Bard has plausibly alleged fraud against GSVAM and Moe. *See* Second MTD Order. Under California law, liability for aiding and abetting fraud requires that the abettor "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Marcelos v. Dominguez*, 2008 WL 2788173, at *8 (N.D. Cal. July 18, 2008). As HMF has no direct contractual obligation to Bard, Bard relies on the first of these tests.

### A. Knowledge

The knowledge prong requires "actual knowledge of the specific primary wrong." *Id.* Aiding and abetting liability under California law requires a finding of actual knowledge, but not specific intent. *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). The HMF defendants urge that their knowledge of the transfer of Moe's interest to Legend LLC is not knowledge of the fraud, and instead that the fraud was GSVAM's false promises to Bard during negotiations that HMF was not party to. They argue that there is no direct evidence that they knew about that promise.

As an initial matter, this characterization of the fraud is too narrow. In the light most favorable to Bard, the alleged fraud was to deprive Bard of payments he was entitled to under the Repurchase Agreement by failing to use revenues from certain assets to pay Bard under the

4

Agreement. Moreover, Bard has sufficiently alleged the HMF defendants' knowledge of the promise to Bard and, later, of Moe's intent to breach his agreement with Bard, to survive a motion to dismiss.

The HMF defendants received multiple drafts of the Repurchase Agreement that was eventually executed between Bard and GSVAM. FAC ¶ 36. It is a reasonable inference that the HMF defendants were engaged in discussions with GSVAM about the impact of the Repurchase Agreement on the HMF Agreement, which was being negotiated that the same time. Bard alleges that the HMF defendants insisted upon the transfer of interests that had simultaneously been offered to him, and which appears to have been central to both agreements.

Moreover, the email exchanges between the HMF defendants and Moe around the time of GSVAM's breach suggest that the HMF defendants knew that Moe wished to "get out of" GSVAM's obligations to Bard, and even encouraged the breach for their own financial benefit. In combination, this is sufficient to satisfy the knowledge prong at the motion to dismiss stage. Their receipt of drafts of the Repurchase Agreement while GSVAM was actively negotiating it with Bard suggests that they had significant access to GSVAM and insight into the negotiations with Bard. The 2019 email exchanges also evidence a familiarity between the HMF defendants and Moe that lends credibility to the suggestion that the HMF defendants know about Bard's intent.

The HMF defendants also rely on the same argument I rejected from GSVAM and Moe: that Moe might have been truthful at the time he made the promise to Bard but changed his mind in the three months that followed. This theory is not sufficient to support a motion to dismiss. As I wrote in the second motion to dismiss order, "Rule 9(b) does not require that fraud be the only possible explanation, or even the most likely explanation." Second MTD Order at 6; *see also United States v. Mariner Health Care, Inc.,* 552 F. Supp. 3d 938, 949 (N.D. Cal. 2021). Bard's allegations are sufficient to allege actual knowledge of the fraud.

### B. Substantial Assistance

"Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance." *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007)

(internal quotation omitted). Bard alleges that the HMF defendants required Moe to transfer his interests to Legend LLC as a condition of their agreement. The HMF agreement was critical to GSVAM's ability to fulfill its payment obligations to Bard, and the HMF defendants knew this because their agreement expressly referenced Bard. Bard has plausibly alleged that they knew Moe's financial interests were already promised to Bard. In combination with the 2019 email exchanges between HMF's owners and Moe around the time HMF terminated their agreement with GSVAM, Bard has sufficiently alleged substantial assistance to survive a motion to dismiss.

## II. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (SIXTH CAUSE OF ACTION)

To state the cause of action for intentional interference with contractual relations, Bard must plausibly plead: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The HMF defendants concede that Bard has pleaded the first two elements but argue that he has not adequately pleaded the remaining three. MTD at 16-17. As I found in my second motion to dismiss order, Bard has plausibly pleaded actual breach and resulting damage, so the only element left to discuss is whether the HMF defendants engaged in intentional acts designed to induce a breach or disruption of the contractual relationship.

Bard has satisfied this prong by alleging that (1) the HMF defendants were engaged in email discussions directly relating to how GSVAM might avoid its payment obligations to Bard, and (2) around the same time as those emails, HMF terminated its contract with GSVAM with knowledge that their payments were critical to GSVAM's ability to pay Bard. While HMF may have had legitimate business reasons for terminating its contract, in combination with those email exchanges that is not sufficient to support a motion to dismiss. The HMF defendants are free to raise this argument at summary judgment.

## III. MOTIONS TO SEAL

Defendants seek to seal substantial portions of the FAC and the briefing and exhibits

relating to the two motions to dismiss.  *See* Dkt. Nos. 47, 53, 56, 71, 78, 80.  These motions are **DENIED**.

The "compelling reasons" standard applies to motions to seal documents.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).   There is "a strong presumption in favor of access is the starting point."  *Kamakana*, 447 F.3d at 1178 (quotations omitted).  To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events."  *Id.* at 1178–79 (quotations omitted).  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  *Id.*

Defendants propose redactions that cover large swaths of information that have nothing to do with proprietary business information but might cause them embarrassment.  They also seek to seal the written agreements at issue in this case in their entirety.  They have not articulated any "compelling reasons" for such large-scale sealing.  Defendants may submit renewed motions within ten days that narrowly tailor their requests and specifically articulate why any proposed redactions meet the compelling reasons standard.  Nothing in this Order qualifies for sealing.

## CONCLUSION

For the foregoing reasons, I **DENY** the HMF defendants' motions to dismiss and provisionally **DENY** the parties' motions to seal.

**IT IS SO ORDERED.**

Dated: October 2, 2023

William H. Orrick
United States District Judge