UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN D BARD,<br><br>    Plaintiff,<br><br>    v.<br><br>GSV ASSET MANAGEMENT, LLC, et al.,<br><br>    Defendants. | Case No. 3:23-cv-00488-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AMENDED COUNTERCLAIMS**<br><br>Re: Dkt. No. 101 |

This Order arises from a dispute between defendant/counterclaimant GSV Asset Management ("GSVAM") and plaintiff/counter-defendant Stephen Bard. GSVAM and Bard entered into a contract through which Bard agreed to sell his shares in GSVAM in exchange for a set fee, paid mostly in monthly payments. GSVAM alleges that it overpaid Bard under that contract, but Bard refused to return the overpayments. It filed counterclaims for, among other things, breach of contract and unjust enrichment, and Bard moved to dismiss. Although there is no contractual provision regarding overpayment, GSVAM is not precluded from asserting claims for unjust enrichment. For those and the following reasons, Bard's motion is granted in part and denied in part.

**BACKGROUND**

The background of this case is outlined in detail in my prior orders. [Dkt. Nos. 51, 77, 86, 92]. This Order assumes familiarity with those facts. I further recount GSVAM's allegations below because its counterclaims do not rely entirely on the allegations in Bard's underlying complaint. *See* Amended Counterclaims ("AC") [Dkt. No. 98].

Bard and Michael T. Moe co-founded GSVAM in 2009. AC ¶ 7. Their relationship soured and eventually the two executed a contract, the "Repurchase Agreement," under which

Bard agreed to sell his stock interest in GSVAM back to GSVAM in exchange for $5 million. *Id.* ¶¶ 8-9; *see also* Repurchase Agreement [Dkt. No. 54-2].[1]

The Repurchase Agreement provided that Bard would be paid $1.5 million up front and the remaining $3.5 million[2] in monthly installments. AC ¶¶ 9-10; *see also* Repurchase Agreement § 3.1. That monthly installment, or "Recurring Payment Amount," is addressed in section 3 of the agreement, which provides in relevant part that "the Company will pay to the Seller . . . an aggregate amount in cash amount equal to $3,500,000.00, payable monthly in arrears, in amounts of $29,166.66 (the '**Recurring Payment Amount**')." Repurchase Agreement § 3.1. The agreement also has the following clause:

> [I]f, following the date hereof, the aggregate revenues earned during the twelve-month period immediately prior to a Pay Due Date (such trailing twelve-month revenues shall be recognized on an accrual accounting basis in accordance with U.S. Generally Accepted Accounting Principles, as of the calendar month preceding such Pay Due Date, as determined from time to time, the "**Aggregate TTM Revenues**"), received by the Company from the entities identified on Annex A hereto (the "**Identified Entities**") decreases below $2,500,000 at any time or from time to time during any year, then the amount of the Recurring Payment Amount shall be reduced to an amount equal to the product obtained by *multiplying* (i) the Aggregate TTM Revenues *times* (ii) ten percent (10%) *times* (iii) one-twelfth (1/12).

*Id.* § 3.1(a).

GSVAM alleges that it paid Bard $29,166.66 monthly from September 2017 until September 2022. AC ¶¶ 12, 28. It was then that GSVAM "reviewed" the Repurchase Agreement and realized that the TTM Revenues had fallen below $2.5 million in September 2020, eventually reaching $0 in October 2021. *Id.* ¶¶ 26-28. GSVAM realized that under the terms of the Repurchase Agreement, it had "overpaid" Bard every month since September 2020 and should not have paid any monthly payments since October 2021. *Id.* ¶ 28. Upon reviewing those calculations, GSVAM also realized that it underpaid Bard from November 2018 until April 2019.

---

[1] I previously took judicial notice of this agreement, [Dkt. No. 77] 1 n.1, and it is also incorporated by reference into the amended counterclaims, *see, e.g.*, AC ¶¶ 8-9.

[2] The AC alleges that Bard would be paid "up to" the remaining $3.5 million, AC ¶ 8, but the Repurchase Agreement—of which I have taken judicial notice—provides that GSVAM will pay Bard a "cash amount equal to" $3.5 million. Repurchase Agreement § 3.1.

2

1  *Id.* ¶ 29.  Offsetting its months of underpayment, GSVAM alleges that it overpaid Bard

2  $488,675.16 in total.  *Id.*

3  GSVAM contacted Bard about the overpayments and sought remittance of the payments.

4  *Id.* ¶ 30.  Bard refused.  *Id.* ¶ 31.  Bard subsequently filed the underlying lawsuit in this case,

5  asserting various claims related to the Repurchase Agreement.  *Id.*; [Dkt. No. 1].

6  GSVAM alleges that Bard was aware he was overpaid for years because he was aware that

7  § 3.1 of the Repurchase Agreement had been "heavily negotiated."  AC ¶ 32; *see also id.* ¶¶ 16-22.

8  It now brings six causes of action against Bard seeking remittance of the overpayment: (1) breach

9  of contract, *id.* ¶¶ 33-40; (2) breach of the implied covenant of good faith and fair dealing, *id.*

10  ¶¶ 41-49; (3) a quasi-contract claim for unjust enrichment, *id.* ¶¶ 50-55; (4) money had and

11  received, *id.* ¶¶ 56-60; (5) mistaken receipt, *id.* ¶¶ 61-66; and (6) declaratory judgment, *id.* ¶¶ 67-

12  71.

13  Bard moved to dismiss the amended counterclaims.  ("Mot.") [Dkt. No. 101].  GSVAM

14  opposed.  ("Oppo.") [Dkt. No. 103].  Bard replied.  ("Repl.") [Dkt. No. 104].  I held a hearing at

15  which counsel for both parties appeared.

16  **LEGAL STANDARD**

17  Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

18  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

19  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

20  face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when

21  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

22  is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

23  omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

24  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts

25  sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

26  In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

27  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

28  plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

3

1    is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
2    fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
3    2008).
4        If the court dismisses the complaint, it "should grant leave to amend even if no request to
5    amend the pleading was made, unless it determines that the pleading could not possibly be cured
6    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making
7    this determination, the court should consider factors such as "the presence or absence of undue
8    delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,
9    undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*
10   *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.     BREACH OF CONTRACT**

    GSVAM's theory for its breach of contract cause of action is that it overpaid Bard pursuant to the terms of the Repurchase Agreement § 3.1(a) and that Bard breached that provision by "refusing to remit" those overpayments.  AC ¶¶ 28-40; Oppo. 5:28-6:2.  In turn Bard contends that GSVAM does not point to any contractual provision that he breached and so fails to state a claim for breach of contract.  Mot. 6:19-8:12.

    In California, "[t]he elements of a cause of action for breach of contract are (i) the existence of the contract, (ii) plaintiff's performance or excuse for nonperformance, (iii) defendant's breach, and (iv) the resulting damages to the plaintiff." *Johnson v. Nationstar Mortg., LLC*, No. 17-CV-03676-WHO, 2019 WL 3718592, at *3 (N.D. Cal. Aug. 7, 2019), *aff'd*, 840 F. App'x 976 (9th Cir. 2021) (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115 (2011)).

    The only contested element here is the third, for breach.  GSVAM asserts that Bard breached § 3.1(a), *see* Oppo. 6:4-17, the plain language of which provides that GSVAM will pay Bard monthly payments of $29,166.66 unless the Aggregate TTM Revenues from the Annex A companies fall below $2.5 million, in which case "the amount of the Recurring Payment Amount shall be reduced" to the given formula.  Repurchase Agreement § 3.1(a).  Though GSVAM

plausibly alleges that the TTM Revenues fell below $2.5 million but it inadvertently continued to pay Bard $29,166.66 monthly, AC ¶¶ 26-30, it does not explain how this mistake constitutes *Bard's* breach of contract. It does not plead, for example, that Bard was responsible for verifying or reducing the payment amount, or that he calculated it, or even that he had any control over it. GSVAM says only that Bard was "aware[] of the heavily negotiated terms of Section 3.1(a)." *Id.* ¶ 32. It is not clear, then, how Bard breached this provision. GSVAM also does not point to any other contractual obligation that Bard failed to follow. Reviewing the Repurchase Agreement, I could find none.

With no contractual provision requiring Bard to pay back overpayments, or even to confirm they were calculated correctly, it is not clear how GSVAM can plead breach. In support of its claim, GSVAM cites *Precisely Software Inc. v. Loqate Inc.*, No. 22-CV-00552-BLF, 2022 WL 4348469, at *2 (N.D. Cal. Sept. 19, 2022), where the district court found that the plaintiff stated a breach of contract claim for refusal to remit overpayments. There, the contract provided that the plaintiffs would pay the defendant once—"*either*" one form of payment "*or*" the other—but the plaintiff alleged that it incorrectly paid the defendant twice. *Id.* at *1 (emphases added). Under the clear terms of the contract, the defendant was not entitled to the second payment, and so the plaintiff plausibly alleged that the defendant breached that contract by accepting the second payment and refusing to remit it. *See id.* Here, though, there are no parallel contractual terms. Section 3.1 says that Bard was entitled to $29,166.66 monthly except in certain situations, and in those situations GSVAM was required to adjust the payment. By accepting the $29,166.66 that he was paid, and unlike the defendant in *Precisely Software*, Bard did not knowingly accept a payment to which he was not entitled—at least as pleaded. That case is therefore inapplicable.

Finally, GSVAM does not point to supporting case law suggesting that overpayment cases are brought as breach of contract cases under California law. That is not to say that GSVAM cannot recover the alleged overpayments—rather, this is not the correct avenue for recovery, as pleaded. Accordingly, this claim is DISMISSED. GSVAM has leave to amend to plausibly allege breach, if possible, though it seems unlikely that it can recover through this cause of action.

## II. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

GSVAM next argues that Bard breached the implied covenant of good faith and fair dealing by refusing to honor "the spirit" of the Repurchase Agreement and "depriv[ing] GSVAM of the benefits contemplated by the parties" when he declined to pay back the alleged overpayments. Oppo. 7:1-8:21. Bard moves to dismiss this claim because he says that GSVAM cannot use this cause of action to impose a contractual duty that was not provided in the Repurchase Agreement. Mot. 8:13-9:16, 11:6-27. He also asserts that the claim is superfluous of Bard's breach of contract claim, *id.* 9:17-11:5, and that Bard failed to allege "unfair interference," *id.* 12:1-13:19.

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873, 886 (N.D. Cal. 2022) (quoting *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996)). The purpose of the covenant is "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Id.* (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349, 8 P.3d 1089, 1110 (2000)). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 8 P.3d at 1110; *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *3 (N.D. Cal. July 13, 2018) (same). In other words, plaintiffs may not "add obligations to the parties' contracts" via a claim for breach of the covenant. *AdTrader*, 2018 WL 3428525, at *10.

Plaintiffs may bring breach of contract claims alongside separate claims for breach of the covenant of good faith and fair dealing. *See In the Black Res., LLC v. Blitz Design, Inc.*, No. 3:22-CV-04227-WHO, 2022 WL 17082372, at *5 (N.D. Cal. Nov. 17, 2022). To do so, "a plaintiff must 'sufficiently distinguish its implied covenant claim from its breach of contract claim' which requires 'more than alleg[ing] [the defendant] breached the implied covenant by the same course of conduct that underlies [the plaintiff's] claim for breach of contract." *Id.* (quoting *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, No. 20-CV-05381-HSG, 2022 WL 195648, at *3 (N.D. Cal. Jan. 21, 2022)).

6

As a preliminary matter, the breach of covenant claim is not superfluous to the breach of contract claim. *Cf. id.* (finding that the plaintiff failed to allege sufficient facts distinguishing its breach of covenant and contract claims). GSVAM alleges that Bard refused to pay back the overpayments in an effort to "unfairly frustrat[e]" GSVAM's rights under the contract, which courts have acknowledged can be sufficient to state a breach of covenant claim. *See QuickLogic Corp.*, 618 F. Supp. 3d at 886.

But the underlying issue with this cause of action is that it seeks to impose contractual duties or obligations beyond those incorporated in the terms of the contract, which is not permissible under California law. *See Guz*, 8 P.3d at 1110. Though GSVAM asserts that Bard breached the implied covenant by failing to refund the payments to which he knew he was not entitled, *see* AC ¶¶ 32, 47-48, it fails to plead that Bard had a contractual duty or obligation to make those repayments.[3] And because there was apparently no contractual obligation for Bard to repay the overpayment, to confirm the amount was correct, or to otherwise verify GSVAM's performance, pigeonholing that claim into a breach of implied covenant cause of action would improperly "create[] obligations not contemplated by the contract." *AdTrader*, 2018 WL 3428525, at *3 (citation omitted). Accordingly, like for the breach of contract claim, this claim too fails because—as pleaded—there is no contractual basis for the obligations that GSVAM says Bard violated.[4]

Finally, as with the breach of contract claim, GSVAM does not cite any California law suggesting that overpayment claims are properly brought as a cause of action for the implied

---

[3] For example, GSVAM argues that its counterclaims assert that the contract "requires the parties to lower and accept a reduced amount in the event of a decline in GSVAM's revenue from the Annex A entities." Oppo. 7:8-10. But the AC does not say that; rather, it alleges that § 3.1(a) "require[es] GSVAM to lower its monthly payments should its revenue from an enumerated list of entities decrease." AC ¶¶ 10-11.

[4] GSVAM asserts that it can plead this claim by alleging that Bard acted "in a way not reasonably contemplated by the contract or the parties." Oppo. 8:18-9:9 (quoting *Convergent Mobile, Inc. v. JTH Tax, Inc.*, No. 4:19-CV-06484-YGR, 2020 WL 1940855, at *1 (N.D. Cal. Apr. 22, 2020)). But for support that this is the correct pleading standard, *Convergent Mobile* cited *Co-Inv., AG v. FonJax, Inc.*, No. C 08-01812 SBA, 2008 WL 4344581, at *3 (N.D. Cal. Sept. 22, 2008), which relied entirely on law that predated the California Supreme Court's decision in *Guz*, 8 P.3d at 1110. *Guz* clarified the requirements for pleading a breach of implied covenant claim. The argument is therefore unpersuasive.

1    breach of the covenant of good faith and fair dealing. That said, that does not preclude GSVAM's
2    claim for relief. *Infra* Part III.
3        For those reasons, the claim is DISMISSED with leave to amend, if possible, though again
4    it seems unlikely that it can recover under this cause of action.

## III. EQUITABLE CLAIMS FOR UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, AND MISTAKEN RECEIPT

    As an alternative to its breach of contract and implied covenant claims, GSVAM asserts that Bard was unjustly enriched by receiving and refusing to remit the overpayments, and it asserts claims for money had and received and for mistaken receipt based on the same conduct. AC ¶¶ 50-66. Bard argues that California law precludes parties from bringing these causes of action as quasi-contract claims where there is a contract concerning the same subject matter. Mot. 15:1-18:2.

    Though the elements of each cause of action differ slightly,[5] the parties' arguments concerning all three are identical: they contest whether GSVAM can bring these equitable claims where there is an enforceable contract on the same subject. Accordingly, I address the arguments together, as well. *See Givex USA Corp. v. Spaghetti Warehouse Rests., Inc.*, No. CV-17-03730-BRO-SSX, 2017 WL 8183140, at *5-6 (C.D. Cal. Oct. 11, 2017) (jointly analyzing plaintiff's claims for unjust enrichment, money had and received, and mistaken receipt and finding the plaintiff prevailed on all three claims where it mistakenly paid defendant money, the defendant did not remit the payment, and no "contract existed" at the time).

    Under California law "a court may 'construe' a claim for unjust enrichment as 'a quasi-contract claim seeking restitution.'" *Beluca Ventures LLC v. Aktiebolag*, No. 21-CV-06992-WHO, 2022 WL 3579879, at *4 (N.D. Cal. Aug. 19, 2022) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). "[A]t the pleading stage, [a plaintiff] may alternately bring both a breach of contract claim and a quasi-contract claim—so long as [the

---

[5] *Compare Shin v. ICON Found.*, No. 20-CV-07363-WHO, 2021 WL 6117508, at *3 (unjust enrichment), *with Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010) (money had and received).

8

plaintiff] pleads facts suggesting that the contract may be unenforceable or invalid." *Id.* at *3 (citing Fed. R. Civ. Proc. 8(d)).

GSVAM alleges that it made a mistake when calculating the payments it owed to Bard under the contract, and so overpaid Bard, and it would be unfair for Bard to keep that payment when it does not belong to him. AC ¶¶ 28-32, 52-54, 58-59, 63-65. California courts have permitted parallel claims to survive, even when there is an enforceable contract at issue. *See Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal. App. 4th 64, 78-80 (2009), *as modified* (June 24, 2009) (permitting claims for money had and received and for unjust enrichment given factual allegations about mistake in performance of a contract); *Am. Oil Serv., Inc. v. Hope Oil Co.*, 233 Cal. App. 2d 822, 830-31 (1965)[6] (same, and holding that "money paid under the mistake of fact may be recovered back, however negligent the payor may have been in making the mistake, unless payment has caused such a change in the position of the payee that it would be unjust to require him to refund the payments made" (citations omitted)); *Savage v. Crag Lumber Co.*, 177 Cal. App. 2d 770, 771-74 (1960) (same). Because these courts have permitted similar claims in similar circumstances, and because Bard does not address these cases or theories, here the three causes of action survive the pleading stage.

Bard argues that unjust enrichment claims cannot be brought where the contract covers the same general subject matter as the issue alleged, but the cases he cites are not on point because none contemplate a party making a mistake in the performance of the contract, as GSVAM alleges it did here. For example, in *AdTrader*, 2018 WL 3428525, at *1, 11, defendant Google terminated a contract when it determined that plaintiff AdTrader violated Google's policies, but AdTrader alleged that Google unjustly retained AdTrader's pre-termination earnings and so sued Google—but not under a theory that AdTrader made any mistake in performance. The district court dismissed the claim because while there was no specific provision for refunds of unfairly retained

---

[6] A subsequent California case noted that the law has shifted since *American Oil*, but the shifts it points to relate to the law governing erroneous fund transfers from banks, which are now addressed in the California Uniform Commercial Code. *See Bank of Am. v. Sanati*, 11 Cal. App. 4th 1079, 1083-84 (1992). This does not seem to have affected the law governing overpayments more generally.

9

payments, there was an enforceable contract regarding the same subject matter. *Id.* at *11. The order did not discuss any allegations of mistake. *See also Saroya v. University of the Pacific*, No. 5:20-CV-03196-EJD, 2021 WL 2400986, at *1-2, 4 (N.D. Cal. June 11, 2021) (dismissing unjust enrichment claim where plaintiff argued the contract lacked a provision covering the specific issue raised, but parties otherwise agreed there was an enforceable contract governing the subject of the dispute, without allegations of mistake); *Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *16 (N.D. Cal. May 13, 2016) (dismissing unjust enrichment claim where, aside from certain terms it viewed as unenforceable, plaintiff agreed that the contract was valid as a whole, with no allegations of mistake). These cases do not address the impact on the parties when one makes a mistake in executing its contractual obligations. And Bard's reliance on these cases to argue that GSVAM cannot bring an equitable claim for overpayment, in combination with his arguments that GSVAM cannot bring a contractual claim for overpayment, suggests that he believes there is no remedy for making a mistaken overpayment. That is not just, and in California, that is not the law. *See Supervalu*, 175 Cal. App. 4th at 78-79; *Am. Oil Serv.*, 233 Cal. App. 2d at 830-31.[7]

Accordingly, because California law permits claims seeking equitable relief based on mistaken overpayment, and because the AC plausibly alleges that there was a mistake, the three equitable claims survive the pleading stage. The motion is DENIED on these bases.

---

[7] At the hearing, GSVAM stated it is not arguing that the Repurchase Agreement is unenforceable or invalid, which is a requirement for some unjust enrichment claims. *See Beluca Ventures*, 2022 WL 3579879, at *4. But it is plausible to interpret the AC as making those allegations: GSVAM pleads that the TTM Revenues fell to zero and so under the calculation provided in § 3.1(a), it owed Bard zero dollars. AC ¶¶ 25-28. Given that the purpose of the contract was to pay Bard monthly for the initial sale, GSVAM's allegations that it no longer must (or can) pay Bard under the contract seem to allege that the contract is no longer valid. The quasi-contract claims could survive on this basis, as well, at this stage.

Relatedly, Bard seems to contend that the purpose of the contract was for GSVAM and the other parties to pay him the owed $5 million, so there is no such thing as an "overpayment" because they had yet to reach that total. Mot. 1:26-2:6. This is persuasive, and the evidence may well bear out in his favor. But at the pleading stage, this argument shows why the unjust enrichment claim survives—because the AC can plausibly be interpreted to allege that the contract is no longer valid, and the defendants (including GSVAM) no longer owe Bard any money, as there is no revenue from the underlying sources from which to pay the money they owe under the contract.

10

**CONCLUSION**

For those reasons, the motion is GRANTED in part and DENIED in part. Any amended counterclaims shall be filed by January 17, 2024.

**IT IS SO ORDERED.**

Dated: December 21, 2023



William H. Orrick
United States District Judge